May it please the Court, my name is Alexa Gould, and I am here with my partner, Christopher Gilbert, and together we represent Appellant Scott Rounds in this appeal. This appeal asks whether a school principal violated a teacher's clearly established constitutional rights when he instructed her not to participate at CU at the Pole, a student-led, student-initiated prayer event. The answer is no for three main reasons. First, Rounds' actions were consistent with the Equal Access Act, a point the district court mistakenly overlooked. Second, qualified immunity is an objective inquiry, and the district court improperly credited Appellee Stacey Barber's subjective interpretation of Rounds' conduct rather than its objective reasonableness. And third, when considering the totality of Barber's allegations, Kenney v. Bermington does not apply, and therefore Rounds did not violate any clearly established law. So when the complaint is read as a whole, Rounds is entitled to qualified immunity. As to my first point, Rounds acted reasonably because his conduct was consistent with the Equal Access Act. Under the Equal Access Act, any presence by a teacher at a non-curricular student activity is required to be supervisory or in a non-participatory capacity. I think that there's a basic fact dispute between the way that you're characterizing the event. Yes, CU at the Pole does involve students, but the time that the complaint says is about praying with teachers before the CU at the complaint, 12B6, so you're saying that it was correct and indisputably correct and, you know, not clearly established that the teacher could meet with other staff members and pray and that she could be instructed that she wasn't allowed to do that, which is what the complaint is about, not indoctrinating children in faith or something like that. Of course, I believe that there's enough in the complaint to show that what Rounds's conduct was reasonable. Barbara alleges that when she emailed staff inviting them to pray at 8 a.m., Rounds responded to that email and said you cannot have a student group and staff group praying at the same time. They weren't going to be at the same time. I thought the complaint alleges there'd be a 20-minute difference. Well, Rounds, the complaint shows that Rounds was telling her that there would be students there at the time, and the qualified immunity analysis looks at... The complaint picks that up and says what the principal was doing was a blanket prohibition. I can't pray when I'm in the presence of students. That's squarely foreclosed by Kennedy, isn't it? Well, I think context matters, so in the email that the Browns did use... No, context may matter, but the problem is we're in the context of a Rule 12 motion. We've got to take the complaint most favorably to what the plaintiff's allegations are. I understand that. Rounds did use that language, you cannot pray in the presence of students, but it was in the context of CU at the Poll. In that very email where that language is used, it is clear that he was talking about the CU at the Poll event. He did not want to risk staff participation at a student-led, student-initiated prayer event. While he used that language, qualified immunity does not require utmost perfection. Reading the email that Barbara pled and is in the complaint, he's telling her and the whole staff, CU at the Poll is a student-led, student-initiated prayer event. You cannot have staff group praying with a student group praying. Can teachers not participate in student-led events like that? In other words, a teacher can't go to CU at the Poll under Kennedy? Under the Equal Access Act, which Kennedy did not address. The Equal Access Act can't trump the Constitution. Well, Kennedy is a different case because Kennedy involved a coach who wanted to pray by himself, and that is a big distinction. The majority underscored by our count 26 times. But the Equal Access Act doesn't turn on visibility, it turns on participation. In other words, what the plaintiff is alleging is that the principal says you can't do this anytime students might be around. One of the things I recall about the 8 o'clock versus 820 time frame allegations is that the principal says, well, students are still going to be around school at that point. You can't go out to the Poll at that stage, even if the CU at the Poll students aren't there. I still think that there's enough in the complaint to show that there were valid concerns with the Equal Access Act, and because Kennedy does not address the Equal Access Act, it was not clearly established that Rounds is telling her that you can't have staff participating in a student event was clearly established. And in the complaint, it also shows that Rounds pulled her away at 810. So even if we were to say that the event started at 820, that is a mere minutes away from when the event were to start. And again, qualified immunity goes to the objective reasonableness, and it is reasonable for Rounds to be concerned. Wait a minute. Mere minutes away? The whole school day is mere minutes away from one class to the next, in between classes, a teacher's break, lunch schedule. Basically, mere minutes away, if that's the standard, a teacher can't pray throughout the day because she might be mere minutes away from students coming in the classroom. That is not what we're saying. I mean, Barbara pled that Rounds was aware of her having a Bible study and never interfered. This situation was unique because it involved a student-led, student-initiated prayer event, and qualified immunity is not determined by a stopwatch. Kennedy does not address the Equal Staff Participation in a student event. Kennedy involved a coach praying at the end of a football game that was... It was immediately after, right? It was at the end of a football game, yes. One of the instances may have been after the football game, but it was after the football game, which I think is an important distinction here because there was less of a risk of a captive audience at the end of a game when students were engaged elsewhere. Kennedy said he was waiting for students to leave, whereas here it was imminent that students would be participating. Rounds... Barbara pled that Rounds had approved that very spot to be... At the end of a football game, you could have hundreds of people still in the stands and the coach goes down onto the field and prays. That may not be exactly a captive audience, but it's certainly a large audience that came to attend a school event. And that is fine, but that's not the issue that happened here. What here was... The risk was participation. The risk that Rounds was trying to avoid was Barbara's presence at a student-led event. But her presence is even enough. I mean, the Equal Access Act says teachers can't facilitate. It doesn't say they can't participate. The Equal Access Act does demand that teachers only be involved in a non-participatory capacity. Right, which means the teacher could go to the pole, pray with the students as long as the student's leading it. What's wrong with that under Kennedy and under the Equal Protection? Well, Kennedy doesn't speak to teachers praying with students. Neither does the Equal Access Act, does it? Well, I would say then that shows that qualified immunity is warranted here because that uncertainty means that it was not clearly established. But the problem was the email said, praying in the presence of students. And Kennedy expressly speaks to allowing you to pray in the presence of students. And the email says, the board policy prohibits staff members from praying in the presence of students. It says with or in the presence. But so it's an or. So that is, if the board policy prohibits you from praying in the presence of students, the board policy and the principal's directive are both in violation of this First Amendment as articulated by the Supreme Court in a very public recent case. I understand, and while I will concede that that language that he used was not appropriate under Kennedy, but in the context of the email. It was not at all after Kennedy. It was violative of First Amendment rights. I don't think so because the email, when you take it as a whole, the focus of it, he was telling her you cannot pray in the presence of students at this student-led event. No, it doesn't say that. If you take the email as a whole, because the context of the email and every communication that Barbara pledged she had with Rounds was about CU at the poll. She does not plead that Rounds told her you cannot pray next Tuesday at the poll or you cannot have your Bible study. He thought there was a more, when he called the teachers into the conference room and said basically you can't be praying where students are around. You can't be praying where it's visible to students. And that was general according to the allegations of the complaint. It wasn't related to CU at the poll. She took it to be a more general prohibition on prayer whenever students might be around. And I know we can't necessarily get in her subjective mind and views. We'll talk about that with counsel opposite perhaps. But we do have to take the allegations of the complaint most favorably to the plaintiff at this stage. So context is a little difficult for us to weigh right here. But I think under the qualified admitting analysis, her subjective interpretation of his conduct is irrelevant and we have to look at the objective reasonableness. We're looking at the employee handbook of 2024. It says, not in the context of CU at the poll, but just makes a blanket statement that nothing prohibits from doing reading materials praying during a time when students are not present. So if the students are present, they're not allowed to be reading materials and praying. That is wrong. That is this handbook. That's not in the context of CU at the poll. And that's unlawful. There's no allegations that Rounds wrote the handbook. He did use that language. But again, and I will concede that language that he used was not the best language, but it was in the context of CU at the poll. I don't believe there's... But the CISD amended to change to that language, which still that language is unlawful. Isn't it? Under the new language, but there's no allegations that Rounds had anything to do with that language. Well, that's his understanding because that's what he's parroting even before. That's what he's saying is the rule and that's what it's at issue. And the school district seems to still think that that's the law and that's not the law. And I understand, but I think there's just... Do you agree that that's not the law? It's not the law that you can't allow teachers to pray in the presence of students. But that's not what happened here though. That's not what happened here. The emails that where he used that language, it is sandwiched between CU at the poll and that communication that he had with her in person was during the event that was CU at the poll. And it was objectively reasonable for Rounds to be concerned that there'd be staff participation at a student-led, student-initiated prayer event. He had approved that time and that place for students to pray. And we cited in our brief cases that show that there is concern with staff praying with students. I mean, Dobie, Wilson, and Daughtry, which are cases where involved a flagpole and students praying there. And the court said we cannot have teachers praying with students at this time. And that is what happened here. And those cases show that it was reasonable for Rounds to be concerned. I mean... Do you think any students pray with Kennedy? But that was different because it wasn't a student-led event. So the Equal Access Act didn't come into play there. And I believe in Kennedy, it was actually only students from the opposing team. So there wasn't even a risk of coercion. Kennedy even cited... It was a mix. I mean, he scaled back his conduct voluntarily over time. But I mean, adults came to pray with him. Other teachers and staff, players prayed with him. It was a very organic thing. Basically, it devolved down to his praying by himself away from others because the school district kept basically forcing him to do that. But that's not what we have here in any respect. Because again, there's no allegation really or no sense that Ms. Barber was trying to lead students or otherwise coerce them or do anything that would be imposing her prayer on them. She wanted to pray at a separate time. I understand. But I think that her subjective intent, it just does not matter here. We look at the reasonableness of Rounds' conduct. It's one of those things that we're trying... You're arguing that we should pour this plaintiff out of court on the Rule 12 stage, on the pleadings. In some of this, you're arguing about context and subjective this and that. I mean, that's appropriate for summary judgment, is it not? Well, I would say under the qualified immunity analysis, standard is a high one. And we do need to look at the objective reasonableness. And under Anderson versus Creighton, the information that Rounds had at the time is important in assessing qualified immunity. And Barber pled that when she emailed asking to pray at 8 a.m. or inviting staff to pray at 8 a.m., that he immediately responded with multiple emails saying, you cannot have a staff group pray at the same time as a student group. And every communication she pled she had with him was in the context of the CU at the Poll event. How can you have a staff group praying at the same time as a student group? He said, and also, isn't there an allegation? That's the first question. Second question is, the complaint specifically says Principal Rounds also told plaintiff that she could pray in private away from students, but not in front of students. If that's in the complaint, we have to take it as true. That's a violation. And I'm almost out of time, but I will address your questions. Both questions. So the first one, I still think that under the Equal Access Act, it does not allow for staff to pray with students. It's very clear. In front of students. But this would be at the same location. And she pleads that Rounds let her pray, have Bible study, and had no issue with that. And I think that is where it's different. She can pray in the presence of students, just not at a student-led student-initiated event. Okay. What is the text of Equal Access Act, which prohibits people from praying with students? Well, the Equal Access Act, I believe it was, under 20 U.S.C. 4071A.C.3, under the Equal Access Act, any presence by a teacher in a non-curricular student activity is required to be in a supervisory or non-participatory capacity. And there's a lot of Supreme Court case, the Mergens case, which says that teachers can only be involved in religious group in a non-participatory capacity. And so that is what, and in any event, again, this is qualified immunity, and Kennedy did not speak to that, and so it wasn't clearly established at the time. And qualified immunity does not require Rounds to risk violating the Equal Access Act, given that Barbara's right to pray at that particular time and place was not clearly established. And I see I'm out of time. Chief Judge Elrod, and may it please the Court, Nathan Mocher of the American Center for Law and Justice, here with my co-counsel, Christy Campagnoni and Liam Harrell, for the Appellee, Stacey Barber. Principal Scott Rounds told Stacey Barber and other teachers that they could not pray, quote, in any locations where students would be present, his own words alleged in the complaint. This was not a prohibition limited to a particular event or student gathering. This was a categorical prohibition of religious activity in any location, again, in his own words, quote, visible to students. That prohibition violated the Supreme Court's clear mandate in Kennedy v. Bremerton. I have two key points, Your Honors. First, Kennedy v. Bremerton, applying long-standing Pickering precedent, clearly established that teachers have a right to engage in religious activity and cannot be stopped from doing so just because a student may observe it. And secondly, Principal Rounds issued a categorical prohibition that directly prohibited the exact thing that Kennedy clearly established. First to Kennedy. Kennedy's discussion was very, very clear. It's a lengthy decision, but its holding cannot be disputed. Coach Kennedy, as Judge Wilson mentioned, engaged in religious activity and prayer at the school 50-yard line in full view of the entire school body. And the Supreme Court emphasized that that religious activity was protected. And more to the point, the school district in Kennedy made identical arguments to the school district here. It sought to prohibit his, quote, demonstrative religious activity on a fear that if students might see it, they might be affected by it. They might be to engage in religious activity too. And the Supreme Court gave a very emphatic no to that. In fact, I think in the main opinion in Kennedy, the Supreme Court emphasized, quote, Kennedy's proposal to pray quietly by himself on the field would have meant some people would have seen his religious exercise. Those close at hand might have heard him too, end quote. But the Supreme Court made very clear that that did not change his constitutional protection. And in fact, the language in Kennedy repeats again and again and again that he was engaging in, quote, visible religious expression or, quote, demonstrative religious activity. In other words, what the school district had no right to do is relegate his prayer to a closet, prohibit him from engaging in prayer just because someone might happen to see it. But what was the principal supposed to do here? I mean, you've got the Equal Access Act that says non-participatory only, teachers and staff can't mix with student-led events. It seems fairly plain that the principal is trying to navigate between the plaintiff's religious freedom rights and expression rights and practice rights and what the Equal Access Act imposes on school districts. I mean, is this, I'm going to use probably an inapplicable set of phrases, but is this just a time-place restriction kind of thing? Don't do it with the students out at the flagpole? Well, Your Honor, I appreciate your question. That leads me to the second thing that I wanted to focus on today, which is the allegations in the complaint of what he said, because I think the answer to your question is to look at what Rounds actually said, because I want to be very clear. I wholeheartedly concede that if he had said something along the lines of what Your Honor just said, if he had said something about there's a student event, so go somewhere else during that student event, because I want to be careful about that. That's a different case. That's how it started. That's how this started. They're going to be there at 820. You don't need to be there at the same time. But, Your Honor, I think that is not what he actually said. Looking at the allegations in the complaint, in each of his communications, his prohibition that he issued was a categorical one, right? This is, of course, the record, pages 12 to 13 and 14. In each of those emails, he says again and again and again that a teacher may not engage in prayer, quote, in the presence of students, quote, visible to students, quote. I think particularly the visible to students language is important, because when Barbara was explaining her desire to pray, he said, quote, even though it is before the school day, you are on campus visible to students in your role as an employee, end quote. That language doesn't mention any student gathering, doesn't talk about any particular student group or anything like that. He never even mentions that a particular student group was scheduled to meet there at 820. But the only thing they're talking about is see you at the poll. But his actual language, Your Honor, is not in any way limited to that. The counsel opposite says we've got to look at the context of how this came up and what's happening. We can't just, I mean, I think it's beyond what Rule 12 requires in favor of a plaintiff to sever out different snippets of what was said and just pretend the rest didn't happen that way. Well, in terms of the context, Your Honor, I think as Chief Judge Elrod mentioned earlier, what he was doing was applying a policy, a policy that had not been written for see you at the poll day, but a policy that applied to all the conduct of the teachers at the school, right? And that policy, just like his conduct, prohibited religious activity in the presence of students. Well, but they had a Bible study for some extended period of time with no incident, no complaint, no restriction. But then in this context, he then takes that policy and applies it even more broadly than the policy would allow to any religious activity in front of students. And I think that language in front of students is particularly important in the transcript of his words that day, which is included here in the record as well, pages 418 and following. In that transcript, that's the language he uses again and again, any religious activity in front of students. I think, to Your Honor's question as well there, I think what's particularly illuminating about that transcript is after he issues this prohibition of any religious activity where students might see, Stacey Barber asked him the natural question, which was, okay, can we go to the parking lot and pray there? And Principal Rounds was very clear, quote, there are students at the front and you so you can't do that. And that's the record at page 421. So to the extent we're going beyond the complaint to look at this context, the context makes clear there is no student group scheduled to meet in the parking lot, but he nonetheless prohibited religious activity there too. And that's why I'm talking about context. So I mean, I'm looking at your brief on page six and you talk about the email that Barber had sent and you say, in response to Barber's invitation, Rounds sent two emails that violated clearly established law. And then that's the one about in the presence of students. So plainly, that email was tied to the invitation to come at eight o'clock. And that's according to your brief. That was certainly the context, Your Honor, yes. In response to Barber's invitation, okay. Does it matter whether or not this was in the context of the poll or not? I don't think so, Your Honor, because I think his actual language is what matters most in terms of the quality. It was only in relationship to see you at the poll. Assuming on Hue and Doe, this were in relationship to a see you at the poll that would be in 20 minutes later, would that make this entitled to qualified immunity? Not if his language hadn't changed. I think the actual language he used here is what matters most for the qualified immunity. Would he be entitled to qualified immunity if he was just trying to keep them out of the way? If he had issued a different instruction that was much more limited rather than the categorical one he had issued. Well, Your Honor, I think that that is where things get at least, I can see they get at least a little bit more complicated. But Kennedy itself is, I think, still very clear that just because a student might happen to see it or a student might happen to be present, that that religious activity cannot be banned. And that's really the key focal point of this case. It's not about, especially as to the qualified immunity inquiry here, it's not about praying with students, right? There is no suggestion by rounds. How does this act even apply in the context of an outdoor activity at a school instead of like, because that was in the context of the classroom usage and using facilities. And the whole context is to allow students to be able to use facilities at the thing. Is standing outside even applicable to the Equal Access Act? No, Your Honor. I think the standing outside students just engaging in personal religious activity is not covered by the Equal Access Act. And I actually have two other reasons why the Equal Access Act is targeted at the activities of teachers acting in their official capacity. So if I'm a school district, I might have teachers supervise actual official student clubs when they're gathering, right? And so the language in the Equal Access Act, I think the Supreme Court in Mergens actually, I think made that fairly clear that that language is about the official capacity activity of a teacher. But secondly, I think what I also want to emphasize is that the activity we're talking about that Stacey Barber did on CU at the Poll Day was not even trying to be with students, prayer with students. I think we make that clear in the complaint at page 13, where Rounds had sent one of his original emails and Stacey Barber responded, quote, this is only for staff before students arrive, just like we've done for the past three years. There'll be no kids when we are out there, end quote. She was very clear about that. And if is, if he had said, I think the students are going to start praying at time X, she would have said, okay, we'll pray at a different time, right? Because that that was not in any way the point of her religious activity. The point of her religious activity was just to pray at the school fly poll. It wasn't about trying to pray with a student group or anything like that. She was clear about what she wanted to do. Participate in political activities that are student initiated, like if you have a George Floyd or Charlie Kirk demonstration before school that's student organic. Can teachers go out there and stand with them? Is that against the policy? Or is religious speech treated worse than other speech? Your Honor, this policy treats religious speech differently from other kinds of speech. It specifically prohibits religious activity in the presence of students in a way that would not apply to other kinds of social or or even political activity. Of course, the district has other relevant rules, but the language of that policy, right, is it's a it's a religion. It's a school district with a policy for the religious activity. Treated differently than the First Amendment rights, other First Amendment rights of teachers, or maybe they have a different response to that. I would contend that it is, yes. There are some other claims here in trying to figure out if this religious right is treated differently. I think so, Your Honor, and I think, too, his the fact that he was applying a policy is really no defense here, too, and I think there's two reasons for that. First, of course, it's been very clear from the Supreme Court and this Court that just the application, like the Chu case from this Court, the application of a policy is not a not a defense if if that policy is unreasonable and violates the Constitution. But secondly, the original the policy had this language of in the presence of students, which is bad enough, to be clear, but it's at least maybe a little bit ambiguous. And what seems to have happened is that originally that policy was applied more generally, and a teacher was still able to have a Bible study, but then Rounds decided that in the presence of students meant anywhere that would be, quote, visible to students. He went far beyond the actual text of the language to any kind of visible religious activity. And so I think it's really important to highlight this because my client's Bible studies come up a couple of times in counsel's argument. I think what we make very clear in the complaint is that she stopped having that Bible study after he said the things he said, because he said you can't do any religious activity. This is further on there in the complaint, I think at record page 16, said you can't do any religious activity where a student might see you. And if she has a Bible study in her classroom before the workday, student might walk by the window and see the Bible study. For that matter, the language he used, any visible religious expression, right, prohibiting any religious activity that would be, quote, visible to students, that language on its face would apply to her praying in her car alone in the parking lot. I guess we have a limited record here, but do we know anything about whether or not the school has a prayer room for its Islamic students and faculty, and do they pray in the same prayer room that would be a place for people to go to say their prayers at certain times of the day and that sort of thing? I'm not aware, Your Honor, and of course this is a 12-6 appeal, I'm not aware at this time of a To Your Honor's point, that actually brings me back to one thing I wanted to mention in Kennedy. One of the things Kennedy talked about is it used these examples of other religious activity that I think in the court's analysis would be clearly and obviously protected, and it talked about a Christian aide praying over lunch in the school cafeteria, which of course there'd be students present who would see that activity, and it talked about a Muslim teacher who wears a headscarf, because of course a Muslim who wears visibly Muslim clothing is also engaging in visible religious activity protected by the Constitution, and the Supreme Court almost treated those examples as well. Obviously this would be protected, obviously that would be, but what Round said would prohibit those things too, and to put a fine point on it, I can't think of any possible reason why what Round said, the prohibition he issued, which to be clear happened well after the Kennedy decision, why that wouldn't have prohibited what Coach Kennedy did, right? Round's categorical ban on religious conduct would have certainly caught in Coach Kennedy's conduct at the football field too, if Coach Kennedy hadn't been employed in KDISD. What about? Even if it was associated only with the football after game, like as vis-a-vis, just like seeing you at the and could choose to join if they chose to, even though the school district repeatedly tried to prohibit people from joining by making it more and more discreet, that so even if it was tied to a particular event, it would still be too onerous, wouldn't it? Yes, Your Honor, and I think, I won't read Kennedy here, but I think if the court's analysis there where the school district really was trying multiple, made multiple attempts to curtail Coach Kennedy's prayer, all those attempts didn't really save the school district from the fact of what it was actually doing, which was banning a teacher from demonstrative religious activity, and I think here the district court, in its analysis at page 389 of the record, I think really succinctly explained the problem with the appellant's arguments, and that is, this is a 12b6 stage. This is a context where we're limited to the four corners of the complaint, and so their discussion of what Rounds may have intended, or this larger discussion of all this context of what Rounds was trying to do, none of that really changes what Rounds said as alleged in the complaint, right? Yeah, I was going to ask about the equal protection claim and whether there's any allegation about Rounds' disparate treatment of Barber. In other words, as I recall it, the district court denied qualified immunity as to all the claims, but isn't the disparate treatment or equal protection claim really against the district, not Rounds personally? So, your honor, the focus of the claim against Rounds personally is, of course, Kennedy and free exercise, but as to equal protection, there is a claim against Rounds as well, in terms of his differential treatment of Stacey Barber. So, the complaint includes allegations that talk about how he had treated her differently in terms of her religious participation, her religious activity, compared to others, for example, talking about differential treatment of clubs. So, I think there are sufficient allegations in the complaint for an equal protection claim as against him as well, although, of course, the focus here is certainly Kennedy and free exercise. Well, but just how then, specifically, did he treat her differently than he treated other teachers or staff? Well, your honor, the complaint alleges that he told her that she wasn't allowed to help facilitate a student club, a religious student club, compared to other staff members. So, the complaint includes that. Other staff members were allowed to do it? Yes, that other staff members, both at that school and other schools within the district. But Rounds had control over other schools in the district? Yes, your honor, but that he targeted her particularly with regard to her religious. We couldn't deny qualified immunity as to Rounds for the school district's more general policies. And that's what I'm trying to get at, is what exactly did Rounds do that would be disparate treatment as to Barber versus others? Your honor, I think it would go back to that, as to her, he issued these kinds of categorical, both these categorical prohibitions of religious conduct and other things. If they were categorical prohibitions, they would have prohibited everybody. That's not disparate treatment. But that they were targeted towards her, that he singled her out to speak with her. And are there allegations that they were only applied to her versus others? We do not allege that these were only applied to her. There were other teachers present who were also told they could not engage in physical activity. There were other people who they were not told these prohibitions, and they were allowed to do similar things. So what's the disparate? Who's treated disparately? Your honor, at the complaint stage, we didn't go into. Do we need to have an allegation that someone's treated disparately in order to, an example or something, so that you could survive on that claim? We did not name a particular individual there, your honor. Or a category of people. Well, I . . . People who do this are treated differently. If you didn't do it, then maybe that claim isn't viable. And I was asking specifically as to Rounds. I think the chief judge is also not necessarily the school district. Because we're here on his qualified immunity denial only. Yes, your honor. Chief judge, I see my time has concluded. May I answer? So, your honors, I think as to the equal protection claim, there wasn't a particular individual alleged as a comparator. Rather, the argument there related to treatment of classes. That as to Barber and her Christian religious activity, Principal Rounds was treating her differently from . . . Than what? Than a different religion? Well, than secular individuals. Than those engaging in other kinds of activity. Okay. And you had an example of that? Or not? Like, the chess club was treated differently, and you could play chess. Or, I mean, what is the example in the complaint? I don't have the complaint up here, but I don't have it today. I don't have a particular example of that. Okay. Thank you. And I think you've answered our questions, unless somebody has something further. Okay. Thank you. Thank you, your honor. I just had a few points I would like to address. The first one is that Barber's counsel introduced the testimony from the conversation with Rounds, which is not in the complaint, but it is in the record. So, I would like to take this opportunity to introduce another document that's in the record, which sheds a lot of light on the reasonableness of Rounds' conduct. It's a document that shows that Rounds approved the CU at the Poll event to be from 8 to 840. It's on page 259 of the record. And so, using . . . and that was part of the preliminary injunction hearing, but the importance of it showing that it was 8 a.m. sheds light on his response to her email that was in the complaint when she asked to pray at the Poll, or invited teachers to pray at the Poll at 8 a.m. So, with that in mind, Rounds did exactly what the Equal Access Act demands principals to do. He appointed a staff member to attend as a supervisor and directed other employees not to participate. And I think a good analogy for the Court would be if a teacher asks a principal . . . or if a teacher . . . let me start over. If a principal approves for a student group to have a Bible study in Room 101 and a teacher says, hey, I want to have a Bible study in Room 101 with my teachers, not with the students, and the principal says, you can't have a Bible study in Room 101. Students are already going to be there. Why not have a Bible study in Room 202? That is basically what happened here. The Eppley's brief says that 8 a.m. was, quote, 20 minutes before their official work hours began, close quote. Number one, do you disagree with that fact, at least as of now? And number two, does it matter? I don't necessarily disagree, but I also don't think it doesn't matter. I mean, the teachers are exempt under FLSA. Her being there before work hours does not mean that she's not there as a teacher. I mean, didn't you earlier in your opening argument refer to the work hours or that the staff was on duty or something like that? I thought you did. Her being there is, and I think the issue is her being there at the time and place of a student-led event would mean that she would be there in her official capacity, but I don't believe that the time of when the workday starts is relevant for this analysis. And I also want to just point out that the handbook language that we've discussed today, I think it might be relevant to the claims against KDISD, but not against appellate rounds here, especially for qualified immunity. And also, Kennedy is the only case that Barber relies on to claim there's clearly established law, but as I've noted that there are important distinctions between Kennedy in this case, and without Kennedy, Barber fails to point to any clearly established law that rounds violated. And Kennedy did not provide guidance for the specific facts pled in this case, which involve a student-led, student-initiated prayer event, and it did not address the Equal Access Act. And there's no case law on how courts have interpreted Kennedy to apply to these facts. Are you aware that there is also, isn't there also a educator section of See You at the Poll, that See You at the Poll's been around for so many years, that their See You at the Poll has morphed into events for lots of people working on school campuses, so it's no longer just, it may have started with a few students at a poll 20 or 30 years ago, I don't remember exactly, but now it's beyond that. And so See You at the Poll could have a student component, but also could have a, we're educators and we believe in prayer, and so we're going to pray. So I actually, for Parenthood's oral argument, I went to the See You at the Poll website. It is a national event, and on the website, actually, I believe it does state that adults should not pray at, should not pray at the poll, and it even advises adults. Right, but, but to answer your question, I, I, I don't believe there is a morphed interest group that also says we're going to choose that. It's, the students are setting a good example for us, and we're going to remember, heed that example, and do our own thing that day, too. I, I think they could, but it would just have to be at a different time under the Equal Access Act, and, or even a different, a day, which, which, I really believe that still today, it would have to be at a different time, because they might be seen by the students. Well, I, I believe that it wasn't clearly established, and that is the issue here. So I, so, and I see that my time has ended. Thank you.